UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

**KATARA BRATCHER,**
**CONNIE SPICER,**
**NATASHIA DAVIS,**
**KIMBERLY THOMAS,** and
**YOLANDA SCOTT,**

    on behalf of themselves and all others similarly situated,

      Plaintiffs,

    vs.

**TERRENCE T. CLARK**, in his official capacity as Executive Director of Flint Housing Commission,

      Defendants.

Case No.

Judge

**CLASS ACTION**

| Attorneys for Plaintiffs | 436 S. Saginaw St., Suite 400 | Phone: (800) 724-7441 |
|---|---|---|
| Center for Civil Justice | Flint, Michigan 48502 | Fax: (810) 244-5550 |
| Lysa Postula-Stein  (P62234) | lpostula-stein@ccj-mi.org | |
| Edward J. Hoort (P25561) | ehoort@ccj-mi.org | |

## COMPLAINT

## PRELIMINARY STATEMENT

1.    Defendant violated his statutory obligations to assist Plaintiffs in affording vital household utilities.

# NAMED PLAINTIFFS

## Ms. Katara Bratcher

2. Plaintiff Katara Bratcher is a beneficiary of the United States Housing Act of 1937 (Housing Act) of the United States Department of Housing and Urban Development (HUD). 42 U.S.C. §1437 *et seq*.

3. From 2013 through the present, Plaintiff Bratcher resided at Kenneth Simmons Square (Simmons Square), 2101 Stedron #115, Flint, Michigan 48504.

4. Simmons Square was a federally-subsidized housing complex that Defendant owned and operated pursuant to his duties under the Housing Act's Public Housing Program (Public Housing). 42 U.S.C. §1437a.

5. From 2013 through the present, Defendant assisted Plaintiff Bratcher in accessing affordable housing by providing her with subsidized residency at Simmons Square. 42 U.S.C. §1437a.

6. Most of Plaintiff Bratcher's utility costs were included in her rent.

7. Plaintiff Bratcher paid her own electric/natural gas bill directly to the utility company.

## Ms. Connie Spicer

8. Plaintiff Connie Spicer is a beneficiary of Public Housing. 42 U.S.C. §1437a.

9. From 2005 through the present, Defendant assisted Plaintiff Spicer in accessing affordable housing by providing her with subsidized residency at Simmons Square. 42 U.S.C. §1437a.

10. Most of Plaintiff Spicer's utility costs were included in her rent.

11. Plaintiff Spicer paid her own electric/natural gas bill directly to the utility company.

### Ms. Natashia Davis

12. From 2005 through the present, Plaintiff Davis resided at 637 E. Stewart Ave., Flint, MI  48505.

13. 637 E. Stewart Ave., Flint, MI  48505 was a single-family house that Defendant owned and operated pursuant to his duties under the Public Housing Program. 42 U.S.C. §1437a.

14. From 2005 through the present, Defendant assisted Plaintiff Davis in accessing affordable housing by providing her with subsidized residency at 637 E. Stewart Ave., Flint, MI  48505. 42 U.S.C. §1437a.

15. Most of Plaintiff Davis's utility costs were included in her rent.

16. Plaintiff Davis paid her own electric/natural gas bill directly to the utility company.

### Ms. Kimberly Thomas

17. Plaintiff Kimberly Thomas was a beneficiary of the Housing Act's Section 8 Housing Choice Vouchers (Section 8 Vouchers) Program. 42 U.S.C. §1437f.

18. From 2013 through the present, Defendant assisted Plaintiff Thomas in accessing affordable housing by providing her with Vouchers, which were rent subsidies Defendant provided pursuant to his Section 8 obligations. 42 U.S.C. §1437f.

19. From 2013 through the present, Plaintiff Thomas utilized her Section 8 Vouchers to rent a privately-owned, single-family home at 2216 Mackin Rd., Flint, MI 48504.

20. Most of Plaintiff Thomas' utility costs were included in her rent.

21. Plaintiff Thomas' landlord maintained water/sewerage service to the house in his name, but Plaintiff Thomas was responsible for paying the full amount of the bill each month.

### Ms. Yolanda Scott

22. From 2009 through January 2017, Defendant assisted Plaintiff Scott in accessing affordable housing by providing her with Section 8 Vouchers. 42 U.S.C. §1437f.

23. From 2009 through January 2017, Plaintiff Scott utilized her Section 8 Vouchers to rent a privately-owned, single-family home at 2017 Chateau, Flint, Michigan 48504. 42 U.S.C. §1437f.

24. Most of Plaintiff Scott's utility costs were included in her rent.

25. Plaintiff Scott paid her own electric/natural gas and water/sewerage bills directly to the utility companies.

## DEFENDANT

26. Defendant Terrence T. Clark is Executive Director of the Flint Housing Commission (FHC), a contracted Public Housing Agent (PHA) of HUD. 42 U.S.C. §§1437a(6) and 1437f(b).

27. Defendant has at all relevant times acted in his official capacity as Executive Director of all Housing Act programs in Flint, Michigan. 42 U.S.C. §§1437a(6) and 1437f(b).

## JURISDICTION

28. Original jurisdiction is conferred upon the Court pursuant to 28 U.S.C. §1331 as to the federal law claims that arise from the Housing Act. 42 U.S.C. §1437 *et seq.*

29. Original jurisdiction is conferred upon the Court pursuant to 28 U.S.C. §1343 as to the civil rights claims that arise from the Civil Rights Act of 1964 (Civil Rights Act). 42 U.S.C. §1983 *et seq*.

30. Plaintiffs seek specific, declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

## THE HOUSING ACT OF 1937

31. The federal government created the Housing Act in order to "remedy the unsafe housing conditions and the acute shortage of decent and safe dwellings for low-income families" throughout the country. 42 U.S.C. §1437 *et seq*.

32. Pursuant to the goals of the Housing Act, each PHA can provide low-income families with residency in Public Housing, PHA-owned buildings that operate within parameters that enable low-income families to afford housing. 42 U.S.C. §1437a.

33. Each PHA can provide low-income families with residency in Project-Based Housing, privately-owned buildings that operate as Public Housing in collaboration with PHAs. 42 U.S.C. §1437f.

34. Each PHA can provide low-income families with rent subsidies in the form of Vouchers that help enable low-income families to pay their rent in privately-owned housing. 42 U.S.C. §1437f.

35. All of the Housing Act's housing programs have parameters within which they provide their beneficiaries with *utility allowances*, pre-determined amounts of financial assistance to pay for the utilities and services that are necessary to maintain "decent, safe, and sanitary dwellings", such as electricity, heat, natural gas, water and sewerage, and garbage collection. 42 U.S.C. §1437a(b)(1); 42 U.S.C. §1437f(o)(2)(D).

36. When a PHA determines the amount of rent to charge a family to live in Public or Project-Based Housing, its calculations must incorporate utility allowances, consideration for the costs of utilities. 42 U.S.C. §1437a(b)(1).

37. When a PHA determines the value of a rent subsidy Voucher that it provides to a family to rent privately-owned housing, its calculations must incorporate utility allowances, consideration for the costs of utilities. 42 U.S.C. §1437f(o)(2)(D).

38. When a Housing Act beneficiary pays a utility cost directly to a utility company, the PHA must separate out the portion of the beneficiary's utility allowance that is applicable to the beneficiary's out-of-pocket costs and provide that amount to the beneficiary. 42 U.S.C. §1437a(b)(1); 42 U.S.C. §1437f(o)(2)(D).

39. While the Housing Act's programs vary in their statutory calculation methods, all utility allowance calculations share a common variable, the market rates for each utility at set points in time. 42 U.S.C. §1437a(b)(1); 42 U.S.C. §1437f(o)(2)(D).

40. PHAs are required to review and adjust utility allowance calculations at least annually. 42 U.S.C. §1437a; 42 U.S.C. §§1437f(c) & (o); 24 C.F.R. §965.507; 24 C.F.R. §982.517(c)(1).

41. PHAs must also review and adjust utility allowances whenever the market rate of a utility fluctuates by 10% or more as compared with the PHA's most recent prior calculations. 42 U.S.C. §1437a; 42 U.S.C. §1437f(c) & (o); 24 C.F.R. §965.507; 24 C.F.R. §982.517(c)(1).

42. PHAs must submit their utility allowance calculations to HUD in the form of utility allowance schedules. 42 U.S.C. §1437a; 42 U.S.C. §1437f(c) & (o); 24 C.F.R. §965.507; 24 C.F.R. §982.517(a)(2).

43. PHAs must maintain documentation supporting their utility allowance schedules. 42 U.S.C. §1437a; 42 U.S.C. §1437f(c) & (o); 24 C.F.R. §965.507; 24 C.F.R. §982.517(a)(2).

## THE CIVIL RIGHTS ACT OF 1964

44. The Civil Rights Act of 1964, 42 U.S.C. §1983, states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

## FACTS

### Plaintiffs' FOIA Requests

45. In 2016, HUD and Defendant received Freedom of Information Act (FOIA) Requests seeking any and all records, back to January 1, 1998, pertaining to Defendant's utility allowance calculations, including the utility allowance schedules themselves, revisions of those schedules, utility allowance modifications for people who qualify for greater benefits based on medical state or disability, and supporting documentation.

### Defendant's FOIA Response as to Public Housing

46. Defendant produced Public Housing utility allowance schedules for 2004, 2005, 2008, 2009, 2013, and 2014,

47. Defendant's Public Housing utility allowance schedules for 2013 and 2014 only provided utility calculations for natural gas and electricity.

48. Defendant's 2013 and 2014 Public Housing utility allowances were miscalculated in violation of the statutory requirements of the Housing Act.

49. Defendant did not produce any documents reflecting the review or revision of Public Housing utility allowances for utilities, other than gas and electricity, for 2013 and 2014.

50. Defendant did not produce any documents reflecting the calculation, review or revision of any Public Housing utility allowances for 2015, 2016, or 2017.

51. Defendant's ongoing miscalculations and lack of calculations of Public Housing utility allowances from 2014 through the present caused Defendant to distribute less money to Plaintiffs than Defendant was obligated to provide.

52. Deficiencies in Defendant's Public Housing utility allowance distributions to Plaintiffs caused them to suffer irreparable harm.

### Defendant's FOIA Response as to Section 8 Vouchers

53. Defendant produced Section 8 Voucher utility allowance schedules for 2004, 2005, 2007, 2008, 2009, 2013, and 2014, each of which only provided utility calculations for natural gas and electricity.

54. Defendant did not produce any documents reflecting the calculation, review or revision of the values for any Section 8 Voucher utility allowances for 2015, 2016, or 2017.

55. Defendant's ongoing miscalculations and lack of calculations of Section 8 Voucher utility allowances from 2014 through the present caused Defendant to distribute less money to Plaintiffs than Defendant was obligated to distribute.

56. Deficiencies in Defendant's Section 8 Voucher utility allowance distributions to Plaintiffs caused them to suffer irreparable harm.

### HUD's FOIA Production

57. In HUD's FOIA response, HUD did not produce any utility allowance schedules or documents supporting utility allowance calculations.

58. HUD did produce the results of its on-site assessment of Defendant's utility allowance calculations, stating,

> **Finding No. 1: The Housing Commission did not perform an annual review of its utility allowance schedule.**[ . . . ]The Housing Commission did not review its utility allowance schedule annually. It is currently using a Utility Allowance Schedule that was developed from a utility allowance study performed in 2012.

*On-site Assessment of the Flint Housing Commission dated February 24-25, 2016*, United States Department of Housing and Urban Development at 10 (May 3, 2016).

59. HUD emphasized the likelihood that Defendant's reliance on outdated data could cause Defendant's beneficiaries to suffer harm by stating,

> Utility costs have a significant bearing on Housing Assistance Payment expenditures, total tenant payments, as well as the determination of rent reasonableness and the affordability of units to program participants. The regulatory requirement for an annual review of utility costs exists to ensure that program expenditures and participant rent burdens are being monitored to ensure consistency with current pricing. By not meeting this requirement, the Housing Commission is unable to show that subsidy calculations and rent reasonableness were performed correctly. Therefore, depending on cost trends, the Housing Commission may have caused subsidy overpayments and/or underpayments.

*Id*.

60. HUD also ordered Defendant to take the following **Corrective Action**:

> 1. The Housing Commission must complete a review of its utility allowance schedule and revise as required by 24 CFR 982.517. The revised utility allowance schedule, supporting data, and the approval resolution of the Board of Commissioners must be submitted to the Detroit HUD Field Office.
>
> 2. The Housing Commission must perform a reconciliation of all voucher participant subsidy calculations to implement the revised utility allowance schedule. The Housing Commission must provide a report to the Detroit HUD Field Office that identifies, by each participating household, subsidy over and/or under-payments caused by the revised utility allowance schedule. The Housing Commission will also need to provide documentation evidencing retroactive correction of the over and/or under-payments to the Detroit HUD Field Office.
>
> 3. The Housing Commission must develop an internal control mechanism that wi11 ensure that an annual review of its utility allowance schedule occurs.

*Id.*

61.     In response to Plaintiffs' FOIAs, neither HUD nor Defendant produced any evidence that Defendant made any effort to take the Corrective Action ordered by HUD.

## RULE 23. CLASS ACTION ALLEGATIONS

62.     Plaintiffs bring suit on behalf of themselves and all others similarly situated, pursuant to Fed R. Civ. P. 23(a) and 23(b)(2).

63.     Fed. R. Civ. P. 23(a) provides that one or more members of a class is permitted to sue or be sued on behalf of a class only if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

64.     A class member may maintain an action under a variety of circumstances, including if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

65. The Named Plaintiffs represent a definable class consisting of every person - under the United States Housing Act of 1937 (Housing Act), 42 U.S.C. §1437 *et seq.* and the Civil Rights Act of 1964 (Civil Rights Act), 42 U.S.C. §1983 *et seq.* - whom Defendant was obligated to provide with more utility allowances than he actually provided, at any time from three years prior to the filing date of this case until classwide relief is granted.

66. Plaintiffs request that the proposed class be certified.

67. The class will continue to accumulate new members until the class is certified and classwide relief is granted.

68. The class is so numerous that joinder of its members would be impracticable.

69. Defendant is in possession and control of records regarding the identity, income, rent, utility allowances, and related housing benefits of every person to whom he was obligated to provide with utility allowances during the time frame at issue.

70. Defendant is in possession and control of records reflecting any and all of Defendant's utility allowance calculations during the time frame at issue.

71. Defendant is in possession and control of records reflecting any and all of Defendant's utility allowance reviews and revisions during the time frame at issue.

72. Defendant is in possession and control of records reflecting the financial benefits Defendant distributed to each class member in the form of utility allowances during the time frame at issue.

73. This case is capable of classwide resolution.

74. All members of the class share the common question of law as to whether the utility allowance calculations at issue were performed in compliance with the statutory requirements of the Housing Act.

75. All members of the class share the common question of fact as to whether the utility allowance calculations at issue were distributed to each Plaintiff in compliance with the statutory requirements of the Housing Act.

76. The Named Plaintiffs will fairly and adequately protect the interests of the class.

77. Determinations of the questions of law and fact will apply to every member of the class in the same ways as they do to the Named Plaintiffs.

78. Plaintiffs' counsel - Lysa Postula-Stein and Edward Hoort of the Center for Civil Justice - will fairly and adequately protect the interests of the class.

79. The Named Plaintiffs have no interests that are antagonistic to those of other class members.

80. The class members can be identified based on objective criteria.

81. The relief sought will resolve the legal question as to whether Defendant performed his utility allowance calculations in compliance with the Housing Act.

82. The relief sought will resolve the factual question as to whether Defendant satisfied his statutory obligations by distributing the correct amount of utility allowances to each person to whom he owed that obligation.

83. The relief sought will resolve the legal question as to whether Defendant must provide all class members with retroactive relief for the utility allowances that he should have, but did not, provide.

## **CLAIMS**

Since 2013, for every person to whom Defendant was obligated to provide with utility allowances, Defendant:

### **COUNT I:**

84. Violated the Housing Act by miscalculating or failing to calculate utility allowances. 42 U.S.C. §1437 *et seq.*

### COUNT II:

85. Violated the Housing Act by distributing less financial assistance for utility allowances than he was obligated to distribute. 42 U.S.C. §1437 *et seq.*

### COUNT III:

86. Violated the Civil Rights Act by miscalculating or failing to calculate utility allowances. 42 U.S.C. §1983 *et seq.*

### COUNT IV:

87. Violated the Civil Rights Act by distributing less financial assistance for utility allowances than he was obligated to distribute. 42 U.S.C. §1437 *et seq.* 42 U.S.C. §1983 *et seq.*

### REQUEST FOR RELIEF

Plaintiffs and the proposed plaintiff class members request that this Court:

88. Assume jurisdiction over this action;

89. Certify this action as a class action under Fed. R. Civ. P. 23(a) and 23(b)(2);

90. Enter a declaratory judgment that during the time frame at issue, Defendant repeatedly violated the Housing Act and the Civil Rights Act by miscalculating or failing to calculate the utility allowances he was obligated to provide to Plaintiffs;

91. Enter a declaratory judgment that during the time frame at issue, Defendant repeatedly violated the Housing Act and the Civil Rights Act by failing to distribute the amount of utility allowances he was obligated to distribute to Plaintiffs;

92. Order Defendant to properly calculate and/or recalculate the utility allowances at issue, in compliance with the Housing Act;

93. Order Defendant to provide Plaintiffs' counsel and the Court with the calculations and recalculations that Defendant performs pursuant to the Court's Order herein, including the results of those calculations;

94. Order Defendant to distribute retroactive relief to each member of the Plaintiff class in amounts equal to the value of the deficiencies identified by the calculations that are ordered herein;

95. Order Defendant to provide Plaintiffs' counsel and the Court with ongoing, timely verification that Defendant has timely distributed the retroactive relief that is ordered herein;

96. Order Defendant to notify each member of the Plaintiff class, pursuant to Fed. R. Civ. P. 23(d), of the relief granted in this case as well as Plaintiffs' rights under the Housing Act and the Civil Rights Act;

97. Grant attorney's fees and costs pursuant to 42 U.S.C. §1988; and

98. Grant such other relief as is just and proper.


Dated: March 9, 2017    /s/ Lysa Postula-Stein
Lysa Postula-Stein (P62234)
Attorney for Plaintiffs